NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 07-1904

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| ROYAL OAK ENTERTAINMENT, L.L.C., ET AL., <br><br> *Plaintiffs-Appellants,* <br><br> v. <br><br> CITY OF ROYAL OAK, ET AL., <br><br> *Defendants-Appellees.* | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN <br><br> **OPINION** |

**BEFORE:** KENNEDY, NORRIS, and COLE; Circuit Judges.

**COLE, Circuit Judge.** Royal Oak Entertainment, L.L.C. ("ROE"), Murray Hodgson, Royal Oak Theatre, LLC ("ROT"), Peter Hendrickson, and New Promo, LLC, (collectively, "Plaintiffs") appeal an award of attorney fees and costs in the amount of $29,772.50 against Plaintiffs and their counsel in favor of Defendants-Appellees, the City of Royal Oak, Michigan ("Royal Oak"), James Marcinkowski, Charles Semchena, and Rodney Keteyian (collectively, "Defendants"). Plaintiffs argue that the district court abused its discretion under 42 U.S.C. § 1988, 28 U.S.C. § 1927, and Federal Rule of Civil Procedure 11. Defendants argue that the district court properly exercised its discretion in awarding attorney fees and costs under both § 1988 and §1927, and that the district court did not rely on Rule 11. For the reasons set forth below, we **AFFIRM** the district court's decision.

## I. BACKGROUND

The merits of Plaintiffs' claims have already been heard, and Plaintiffs' causes of action have previously been dismissed by this Court. *Royal Oak Entm't, LLC v. City of Royal Oak*, 205 F. App'x 389 (6th Cir. 2006). While the present appeal involves only the sanctions against Plaintiffs and their counsel, the underlying facts of this dispute are relevant to the district court's award of attorney fees and costs. The facts are set forth in this Court's previous opinion:

> Nobody in Particular Presents ("NIPP"), which is not a party to this action, purchased the Royal Oak Music Theater ("the Theater"), located in Royal Oak, Michigan, and the Theater's liquor license, at a bankruptcy sale some time before 2000. NIPP thereafter obtained the City's approval of a plan of operation ("PO") for the Theater, and for a time operated the Theater itself. In the fall of 2002, Hodgson and Hendrickson began negotiating with NIPP for the purchase of the Theater, including the liquor license, the Sunday sales permit and the dance permit. In anticipation of the sale -- and without ever having requested that the liquor license be transferred -- Hodgson submitted a PO to the [City Liquor Control Commission] Committee [("Committee")] on May 28, 2003, stating that he was doing business as "Royal Oak Music Theater" on behalf of "an entity to be formed." The Committee voted to set this PO for a public hearing on June 26, 2003. For reasons not explained by the parties and certainly not clear from the record, the minutes of the Committee state that the public hearing would be set for June 26, 2003, but the minutes of the hearing itself indicate that it was held on June 25, 2003.
>
> On June 24, 2003, Sergeant T.J. Berrington ("Berrington") of the Royal Oak Police Department ("ROPD") sent a memorandum to his superiors regarding a nightclub called "Space" that Hodgson had operated in Detroit. The memorandum contained information -- apparently derived from Berrington's conversations with members of the Detroit Police Department and from two newspaper articles -- indicating that there were 19 assault and battery reports stemming from incidents at Space, mostly concerning bouncers[] assaulting customers. Berrington's memorandum was forwarded to Deputy Chief Wightman ("Wightman") and then to Police Chief Quisenberry ("Quisenberry"). Wightman also included his own memorandum reiterating that there were 19 assault and battery reports resulting from incidents at Space.

Before the June 25th hearing, Hodgson submitted a new PO; it is this PO that was discussed at the hearing on June 25. At that hearing, Deputy City Attorney James Marcinkowski ("Marcinkowski") advised the Committee that POs are not subject to public hearing, so the Committee voted to continue the hearing until July 15. On July 4, Hodgson wrote an email to Quisenberry in order to set the record straight regarding the information contained in the June 24 memorandum, stating that 12 of the 19 assaults that allegedly occurred at Space in fact occurred after Space had closed. Hodgson sent another email to Quisenberry on July 10, complaining that Donald Foster ("Foster") of the ROPD refused to meet with him in order to hear his side of the story.

The next day, Foster sent Quisenberry a report entitled "Space Nightclub Background Investigation (2nd Part)," which Plaintiffs assert was made available to the public and the media before the Plaintiffs were allowed to see it. The report was not flattering from Plaintiffs' perspective. It quoted a newspaper article describing Space as having "mind-altering lights," which it connected with possible use of the drug "ecstasy" at the club, but it also summarized interviews with neighbors of Space and news investigators, all of whom reported that Space was well-run and a good neighbor. A section entitled "Word on the Street" included nine unattributed quotes, supposedly provided by people on the "streets of Detroit in area of Space," all of which cast Space in a negative light from a law-enforcement perspective. The final section of the report again stated that there had been 19 criminal reports stemming from incidents at Space, and additionally linked a murder to the club by stating that the suspect and victim had been arguing inside Space and that the shooting occurred in the Space parking lot. Hodgson was eventually vindicated to some extent when an investigator from the Detroit Police Department sent a letter to Hodgson admitting that "[a]t no time has [sic] warrants been issued or bouncers been investigated for any alleged crimes at Space Night Club."

The July 15th public hearing went forward as scheduled, and Hodgson told the Committee that, if NIPP's liquor license was ever transferred, it would be transferred to ROT, which Hendrickson owns. The Committee voted to recommend that the PO be denied because neither Hodgson, Hendrickson, nor ROT owned a valid liquor license, and none of them had applied for a new license or the transfer of a new license into Royal Oak. In the Committee's view, the City's ordinances did not permit a non-licensed party -- other than an applicant for a new license or for transfer into the City of a new license -- to submit a PO.

On July 24, 2003, ROE and NIPP entered into a management agreement for the Theater which provided that NIPP would operate the Theater until all licenses and permits were transferred to ROE, at which time ROE would take over management.

About the same time, Hendrickson submitted a request that NIPP's liquor license be transferred to ROT. On August 1, Marcinkowski drafted two proposed resolutions for the Committee to adopt, stating "BE IT RESOLVED that the request of 'Space' and/or Murray Hodgson to operate the Royal Oak Music Theatre (318 West Fourth Street) is denied" and "BE IT FURTHER RESOLVED that the proposed plan of operation of 'Space' and/or Murray Hodgson is denied." The Committee adopted both resolutions at its August 4th meeting.

Two days later, Marcinkowski sent a letter to Julie Wendt, Director of Licensing for the Michigan Liquor Control Commission ("MLCC"), informing her that the Committee had passed a resolution denying Hodgson's request to operate the Theater. He sent another letter on August 12th, telling her about the management agreement between NIPP and ROE. The MLCC wrote to Hendrickson on August 11th, telling him not to invest any money in renovating the Theater until the transfer of the liquor license from NIPP to ROT was approved. The ROE-NIPP management agreement was dissolved shortly thereafter because the Committee had voted to not allow Hodgson to operate the Theater, and, on August 28th, ROT and NIPP entered into a management agreement for the Theater. Meanwhile, on August 18th, Hodgson submitted another PO to the Committee for its approval.

Hodgson thereafter requested that the Committee reconsider its August 4th decision to not allow him to operate the Theater. The Committee met the next day and made no decisions regarding Hodgson's newest PO or his request for reconsideration, but suggested that it address at its next meeting the issue of whether NIPP's liquor license should be transferred to ROT. On October 3rd, NIPP (which still owned the liquor license) and ROT jointly submitted a PO to the Committee, and ROT submitted another one on October 8th. The Committee approved the October 3rd PO at its October 14th meeting, but did not address the liquor license transfer. ROT thereafter submitted yet another PO, which the Committee approved on November 6th. At that time, it also voted to recommend to the City Commission that NIPP's liquor license not be renewed unless, before the license came up for renewal, NIPP installed a fire suppression system in the Theater. Moreover, the Committee voted to recommend that NIPP's Class C liquor license be transferred to ROT, but recommended that the dance permit accompanying the liquor license not be transferred. The City Commission adopted these recommendations, but the MLCC, which has the final authority to grant or deny a liquor license transfer, never acted on these recommendations and has never transferred NIPP's liquor license to any entity.

Plaintiffs filed this action on July 21, 2004, alleging that the Defendants had violated their rights to due process and equal protection, retaliated against them for exercising their First Amendment rights, conspired to deprive them of their

constitutional rights, and failed to prevent the violation of their constitutional rights, and that the Defendants are liable to them for damages under the RICO Act. The complaint also contains several state-law causes of action.

On September 14, 2004, the Defendants collectively filed a motion to dismiss for failure to state a claim upon which relief can be granted. The district court took the motion under advisement and, on January 6, 2005, entered an order converting it to a motion for summary judgment and directing the parties to present to the court any evidence and arguments that they wanted considered for purposes of the motion. Several months later, after hearing oral argument on the motion, the court granted summary judgment to the Defendants on all of the Plaintiffs' federal claims and declined to exercise jurisdiction over the remaining state-law claims.

*Royal Oak Entm't*, 205 F. App'x at 391-94 (footnotes omitted). Plaintiffs appealed and this Court affirmed the district court's grant of summary judgment on Plaintiffs' federal claims.[1] *Id.* at 398.

Thereafter, Defendants filed a motion seeking $98,260 in attorney fees and $739 in costs under 42 U.S.C. § 1988 and 28 U.S.C. § 1927. *Royal Oak Entm't, LLC v. City of Royal Oak*, 486 F. Supp. 2d 675, 677 (E.D. Mich. 2007). The district court granted Defendants' motion in part, finding Plaintiffs and their counsel, Cindy Rhodes Victor, jointly and severally liable for $29,772.50 in fees only. *Id.* at 680.

Plaintiffs and their counsel moved for reconsideration, which the district court denied on June 8, 2007. *Royal Oak Entm't, LLC v. City of Royal Oak*, No. 04-72728, 2007 U.S. Dist. LEXIS 43726, at *1 (E.D. Mich. June 8, 2007). This appeal followed.

---

[1] The district court claimed to have "remanded" Plaintiffs' state law claims despite the fact the case was originally filed in federal court. This Court considered the district court's remand as a declination of supplemental jurisdiction and dismissed the state claims for lack of subject matter jurisdiction. *Royal Oak Entm't*, 205 F. App'x at 394 n. 2.

## II. ANALYSIS

### A. Standard of Review

"We review a district court's award of attorneys fees under 42 U.S.C. § 1988 based on an abuse of discretion standard." *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000). "In light of a 'district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters,' an award of attorneys' fees under § 1988 is entitled to substantial deference." *Reed v. Rhodes*, 179 F.3d 453, 469 n.2 (6th Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). We also apply an abuse-of-discretion standard of review to decisions awarding sanctions under 28 U.S.C. § 1927. *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996) (citing *Orlett v. Cincinnati Microwave, Inc.*, 954 F.3d 414, 417 (6th Cir. 1992)).

### B. Sanctions under 42 U.S.C. § 1988

Under 42 U.S.C. § 1988, a district court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "[A] prevailing defendant should only recover upon a finding by the district court that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994) (internal quotation omitted). "Application of these standards requires inquiry into the plaintiffs' basis for bringing suit." *Smith v. Smythe-Cramer Co.*, 754 F.3d 180, 183 (6th Cir. 1985). "[I]n applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."

- 6 -

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978). A "plaintiff should not be assessed his opponent's attorney fees unless the court finds the claim was groundless at the outset or 'that the plaintiff *continued to litigate after it clearly became so.*'" *Smythe-Cramer Co.*, 754 F.2d at 183 (emphasis added) (quoting *Christianburg Garment Co.*, 434 U.S. at 422)).

We conclude that the district court's decision awarding attorney fees was not an abuse of discretion because Plaintiffs' claims were frivolous. In awarding attorney fees, the district court determined that "Plaintiffs and their counsel should have known after the filing of Defendants' motion to dismiss the federal claims that their federal claims had no basis in law . . . ." *Royal Oak Entm't*, 486 F. Supp. 2d at 677. We agree. Plaintiffs should have been aware, particularly after Defendants' filing, that they lacked standing to sue for violations of their asserted substantive and procedural due process rights. This Court has consistently held that a plaintiff who brings a substantive or procedural due process claim must identify a protected liberty or property interest. *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Here, Michigan law clearly states that no entity has a property interest in a liquor license unless the entity holds the license or has held it in the past. *Wojcik*, 257 F.3d at 609-10. Even "[r]udimentary legal research would have shown these Plaintiffs did not have standing because they had no property interest in the liquor license or any of its attendant permits because they never held either the license or the permits." *Royal Oak Entm't*, 486 F. Supp. 2d at 679 (citations omitted). Thus, Plaintiffs acted frivolously when they continued pursuing this action after Defendants pointed out this inadequacy in their motion to dismiss.

Further, Plaintiffs' remaining claims lacked foundation, and they acted with frivolity when

they failed to dismiss those claims after reviewing Defendants' motion to dismiss. Specifically, Plaintiffs brought claims against Defendants for First Amendment retaliation, as well as violations of equal protection under 42 U.S.C. § 1983, violations of 42 U.S.C. §§ 1985 and 1986, and for damages under the 18 U.S.C. §§ 1961 and 1962 ("Racketeer Influenced and Corrupt Organizations Act" or "RICO"). In our previous decision, we determined that the record was devoid of evidence showing a causal connection between protected First Amendment activity and any alleged adverse government action, and that Plaintiffs had failed to provide any facts or other evidence in support of that claim. *Royal Oak Entm't*, 205 F. App'x at 398. We also concluded that Plaintiffs' equal protection claim was wholly unsupported by the record. *Id.* at 398-99. Similarly, we determined that no case law supported Plaintiffs' arguments under §§ 1985 and 1986. *Id.* Finally, we stated that "Plaintiffs have wholly failed to plead -- let alone show evidence of -- any predicate offense committed by Defendants" to support a claim under RICO. *Id.* Considering the record that was before the district court, that court was well within its discretion to award sanctions against Plaintiffs under 42 U.S.C. § 1988.

## C. Sanctions under 28 U.S.C. § 1927

28 U.S.C. § 1927 allows a court to award sanctions against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The statute specifically provides that in such situations, a court may require an attorney "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.* A court may assess fees without finding bad faith, but"[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could

agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) (citing *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)). In short, "§ 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence. Thus, an attorney is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2007) (internal citations omitted). "We construe 'vexatiously multiplying proceedings' to include conduct where 'an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of non-frivolous claims.'" *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)). "We have also held that § 1927 sanctions are appropriate where 'an attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by the member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Shepherd*, 313 F.3d at 969 (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996) (internal quotation omitted)).

Here, the court imposed sanctions for counsel's failure to fulfill her "obligation as an officer of [the] Court to instruct her clients that they had no legal remedy and either voluntarily dismiss this case or make a good faith argument to change the law." *Royal Oak Entm't*, 486 F. Supp. 2d at 679. Because Plaintiffs' counsel did neither, we believe the district court properly concluded that she "therefore fell short of her obligations to the bar." *Id.* at 680. These failures forced Defendants to

incur significant additional expenses after Defendants' motion to dismiss pointed out why Plaintiffs had no claim. Thus, we affirm the sanctions against Plaintiffs' counsel under § 1927.

### D. Sanctions under Federal Rule of Civil Procedure 11

Finally, Plaintiffs' argument that the district court abused its discretion in awarding fees and costs under Rule 11 is foreclosed by the district court's reconsideration order of June 8, 2007, which explicitly states that "Federal Rule of Civil Procedure 11 is not the basis of these sanctions." *Royal Oak Entm't*, 2007 U.S. Dist. LEXIS 43726, at *2.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court awarding fees of $29,772.50 to Defendants under 42 U.S.C. § 1988 and 28 U.S.C. § 1927.